UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11164-NMG

GUEST-TEK INTERACTIVE ENTERTAINMENT INC., and GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.,

Plaintiff,

v.

THOMAS PULLEN and PUREHD INC.,

Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT AND ADD DEFENDANTS SOLUTIONINC LTD. AND GLEN LAVIGNE

Plaintiffs, Guest-Tek Interactive Entertainment, Inc. and Guest-Tek Interactive Entertainment LTD, (collectively, "Guest-Tek") move the Court for leave to amend to add SolutionInc Ltd. ("SolutionInc") and Glen Lavigne ("Lavigne") as defendants in this case. A copy of the proposed Amended Complaint is attached as Exhibit A.

### SUMMARY OF ARGUMENT

On Sunday night, May 3, 2009, defendant Thomas Pullen ("Pullen") abruptly resigned from Guest-Tek. Through a forensic review of Pullen's laptop computer after he resigned, Guest-Tek learned that Pullen had been planning his resignation for no less than eight months. During this eight month period, Pullen misappropriated thousands of documents containing confidential and proprietary business information and trade secrets from Guest-Tek. Pullen also actively deceived Guest-Tek by pushing to obtain confidential documents and by injecting himself into numerous Guest-Tek meetings during which Guest-Tek's trade secrets and

confidential and proprietary information were discussed and distributed. All the while, Pullen knew he was leaving to set up a competing entity. After soaking up Guest-Tek's trade secrets and confidential and proprietary business information, Pullen resigned and started a competing company called PureHD Inc. ("PureHD"). While Guest-Tek was aware that SolutionInc and Lavigne had some involvement in the formation of PureHD from the initial forensic review, Guest-Tek was unaware of the extent of that involvement until now. Since filing the initial Complaint, Guest-Tek has learned through additional forensic analysis and discovery, that SolutionInc and Lavigne, SolutionInc's President, *inter alia*, aided and abetted Pullen's breach of fiduciary duty and conspired with Pullen and PureHD to steal Guest-Tek's trade secrets and confidential and proprietary information and form an entity to unlawfully compete with Guest-Tek.

Despite the fact that Pullen and PureHD ("Defendants") have been stonewalling discovery in this case, the limited production available to date makes it abundantly clear that SolutionInc and Lavigne are far more than just passive investors in PureHD as originally believed. Rather, they were and are, intimately involved in the formation and operation of PureHD. For example, Lavigne and SolutionInc have received and retained Guest-Tek's confidential and proprietary business information and trade secrets, have hired Guest-Tek employees and have "partnered" with Pullen and PureHD in making proposals to Guest-Tek's customers, potential customers and employees utilizing Guest-Tek's confidential and proprietary business information and trade secrets.

As explained in the Amended Complaint, SolutionInc and Guest-Tek compete in the high speed internet access and voice over internet protocol market. SolutionInc did not compete with Guest-Tek in the free-to-guest ("FTG") market. What the early stages of discovery have shown

is that SolutionInc wanted to get into the FTG market, but apparently did not want to spend the millions of dollars on the research and development necessary to enter it on their own. Instead, SolutionInc located a willing conspirator, Pullen, who had access to Guest-Tek's trade secrets and confidential and proprietary business information and conspired with Pullen to misappropriate that information and use it to form a competing venture, PureHD and penetrate the FTG market. Not only are Pullen and PureHD liable, *inter alia*, for misappropriating Guest-Tek's confidential information, SolutionInc and Lavigne are liable for, *inter alia*, aiding and abetting Pullen's breach of fiduciary duty and of conspiring with Pullen to use Guest-Tek's confidential information as the basis for PureHD.

## PROCEDURAL HISTORY

Guest-Tek commenced this action against Defendants Pullen and PureHD on July 9, 2009. Because Pullen misappropriated thousands, if not tens of thousands, of Guest-Tek documents and electronic files, Guest-Tek immediately sought an injunction preventing Defendants from using or disclosing Guest-Tek's trade secrets and confidential and proprietary business information. After significant negotiation, during which Defendants necessarily acknowledged that Pullen misappropriated Guest-Tek's information, on August 7, 2009, the parties entered into a Stipulated Order that prevented Defendants from continuing to access Guest-Tek's trade secrets and confidential and proprietary information (Docket No. 10). The parties also entered into an Assented to Motion for Expedited Discovery (Docket No. 11). On August 28, 2009, the Court granted the Assented to Motion for Expedited Discovery (the "Expedited Discovery Order").

Under the Expedited Discovery Order, the parties were permitted to serve up to seven requests for documents and interrogatories; responses to these discovery requests were due within twenty days. Pursuant to the Expedited Discovery Order, Guest-Tek served documents

3

requests on September 1, 2009. To date, Defendants have not produced all the responsive documents to Guest-Tek's initial or "expedited" requests. Moreover, Defendants have dribbled out documents in deliberately slow fashion. It is readily apparent from Defendants' obfuscation that their true goal is to "run out the clock" so Guest-Tek cannot discover the true extent of Defendants' wrongdoing. Defendants' document responses are a model of delay:

- On September 30, 2009, Defendants first produced fourteen pages of documents;
- On October 14, 2009 and October 22, Defendants produced approximately 650 pages of documents;
- On November 24, 2009, Defendants produced roughly another 190 pages of documents;
- On December 30, 2009, Defendants produced four pages of documents;
- Defendants did not produce any documents in January 2010;
- Defendants produced an additional 150 pages of documents in February 2010;

More than six months later after serving the "expedited discovery", Guest-Tek is still missing whole categories of critical information.[1] Indeed, in part, because of Defendants' lack of responsiveness, not one deposition in this case has occurred. However, even with the limited amount of information produced, Guest-Tek now has information that SolutionInc and Lavigne, *inter alia*, are guilty of aiding and abetting Pullen's breach of fiduciary duty and conspiring with Pullen to use Guest-Tek's confidential information and unlawfully compete with Guest-Tek.

## SUMMARY OF NEW ALLEGATIONS

Discovery reveals that while Pullen was employed by Guest-Tek, he sent Guest-Tek's confidential business information and trade secrets directly to Lavigne and SolutionInc. *See e.g.* Am. Compl. at ¶¶ 39, 65, 67, 68, 75, 76 and 85-87. For example, one of the Guest-Tek

---

[1] The discovery issues are more fully discussed in the affidavit of Christopher J. Marino, filed in connection with Guest-Tek's Motion to Extend the Scheduling Order.

documents sent to Lavigne and SolutionInc was marked "confidential," thus Lavigne and SolutionInc knew it was a breach of Pullen's duty to be sharing that information. Lavigne and SolutionInc accepted this document because they all agreed they needed it to give PureHD a "head start." Indeed, the document sent to Lavigne and SolutionInc was aimed at satisfying PureHD's number one business development priority. This is just one of many examples described in the Amended Complaint of SolutionInc and Lavigne's unlawful conduct which necessitates their inclusion in this case.

In sum, discovery has revealed that PureHD and SolutionInc present themselves to potential customers as "partners." *See, e.g.*, Am. Compl. ¶¶ 41-44, 80, 81 and 99. To achieve that end, Pullen exchanged Guest-Tek's confidential and proprietary information and trade secrets with Lavigne and SolutionInc to form and operate PureHD. Notwithstanding their knowledge of this unlawful conduct, Lavigne and SolutionInc for example agreed to hire Chris Holman as a "sales agent" so Pullen could stay "underground." In order to assist Holman to act as "the face" of PureHD, Pullen sent confidential and proprietary information to Holman. *Id.* at ¶¶ 77-78.

Defendants, including Lavigne and SolutionInc, also misappropriated Guest-Tek's proprietary FTG delivery methodology. *Id.* at ¶¶ 41-44, 98. To accomplish that theft, Lavigne and SolutionInc, with Pullen's assistance, attempted to hire and, did in fact hire at least one Guest-Tek employee with specific knowledge of Guest-Tek's confidential and proprietary delivery methodology. *Id.* at ¶¶ 68-72 and 74. As additional evidence of the unlawful conduct, Pullen facilitated the recruitment of Guest-Tek employees while he was still employed at Guest-Tek. Lavigne substantially assisted in this endeavor by preparing the offer letter – from

SolutionInc Limited Technologies – and transmitting it to Pullen to present to the Guest-Tek employee.

Furthermore, Defendants have submitted at least one proposal that incorporates Guest-Tek's FTG delivery methodology, Bill of Materials and quotes Guest-Tek's proposal to the same customer verbatim. In this same proposal, Pullen and PureHD describe SolutionInc as their "partner." *Id.* at ¶¶ 88-101.

## ARGUMENT

### I.  GUEST-TEK MAY PERMISSIVELY JOIN DEFENDANTS IN THIS ACTION

Under Rule 20(a)(2) of the Federal Rules of Civil Procedures, Guest-Tek may join SolutionInc and Lavigne as defendants in this action because the claims asserted against them arise out of the same transaction, occurrence or series of transactions and occurrences. *See* Fed. R. Civ. P. 20(a)(2). The Amended Complaint alleges, *inter alia*, that SolutionInc and Lavigne both aided and abetted Pullen's breach of fiduciary duty and conversion and conspired with Pullen to misappropriate Guest-Tek's trade secrets and confidential and proprietary business information in order to set up an entity to unlawfully compete with Guest-Tek. *See e.g.,* Am. Compl. ¶¶ 39, 41-44, 65-123. SolutionInc and Lavigne may be permissibly joined as defendants here because their liability, for aiding and abetting and conspiracy arises out the same series of occurrences as Pullen's liability. Moreover, their liability under the Massachusetts Trade Secrets Act and G.L. c. 93A, is premised on their knowing receipt and use of Guest-Tek's confidential and proprietary business information and trade secrets from Pullen and PureHD. *See Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 (1974) (interpreting phrase "transaction or occurrence" broadly to require a "logical connection").

### II.  GUEST-TEK SHOULD BE PERMITTED TO AMEND THE COMPLAINT TO ADD DEFENDANTS SINCE LEAVE SHALL BE FREELY GIVEN

Rule 15(a) of the Federal Rules of Civil Procedure provides that the Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). As the First Circuit has noted, unless the trial court has an adequate reason to deny leave to amend, (e.g., undue delay, bad faith, dilatory motive, futility of amendment, or prejudice) the motion should be granted. *See e.g., Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996). Because Guest-Tek is only just now learning about the misconduct of SolutionInc and Lavigne, Guest-Tek should be given leave to amend to add SolutionInc and Glen Lavigne as additional defendants.

### A. Guest-Tek's Claims Against SolutionInc And Lavigne Are Not Futile

Guest-Tek's amendment to add SolutionInc and Lavigne is not futile. Guest-Tek seeks to amend its Complaint to assert four claims against SolutionInc and Lavigne: (i) aiding and abetting a breach of fiduciary duty; (ii) civil conspiracy; (iii) violations of the Massachusetts Trade Secret Act, G.L. c. 93, §§ 42 and 42A; and (iv) violations of G.L. 93A. All of these claims are well recognized in Massachusetts.

Massachusetts law recognizes a claim for aiding and abetting a breach of fiduciary duty. *See e.g., Arcidi v. Nat'l Ass'n of Government Employees, Inc.*, 447 Mass. 616, 623-624 (2006). To plead such a claim, the plaintiff must allege: (a) a breach of fiduciary duty; (b) the defendants knew of the breach; and (c) the defendants actively participated or substantially assisted in or encouraged the breach so that they could not reasonably be held to have acted in good faith. *Arcidi*, 447 Mass. at 623-624; *Spinner v. Nutt*, 417 Mass. 549, 556, 631 (1994). The Amended Complaint alleges that Pullen breached his fiduciary duty by, among other things, stealing Guest-Tek's confidential information and diverting corporate opportunities, *see e.g.*, Am. Compl. at ¶¶ 42-44, 65-79, 88-101 and 119-123; (2) SolutionInc and Lavigne knew of Pullen's breach because they received the stolen trade secrets and confidential and propriety information belonging to Guest-Tek as well as the corporate opportunities, *see e.g.* Am. Compl. at ¶¶ 42-44, 65-83, 87-107

7

and 119-123; and (3) that they actively and substantially assisted or encouraged the breach, *see e.g.*, Am. Compl. at ¶¶ 42-44, 65-107 and 112. *See Arcidi,* 447 Mass. at 623-624.

Guest-Tek's claims are not futile because Massachusetts recognizes a "concerted action" theory of conspiracy. *See e.g. Gutierrez v. Mass. Bay,* 437 Mass. 396, 415 (2002); *Kurker v. Hill,* 44 Mass. App. Ct. 184, 188-189 (1998). The Amended Complaint alleges that SolutionInc and Lavigne conspired with Pullen and alleges overt acts pursuant to an agreement to injure Guest-Tek, *see e.g.,* Am. Compl. ¶¶ 39, 41-44, 65, 68-82, 85, 86, 89-107. *See Kurker,* 44 Mass. App. Ct. 188-189; *Richardson v. Northeast Hospital Corp.*, 71 Mass. App. Ct. 1116, *2 (2008).

The Massachusetts Trade Secret Act, G.L. c 93, § 42 *et seq.*, prohibits a party from using or disclosing, without permission, confidential information acquired from another. *See* G.L. c. 93, § 42; *see also Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172 (1993)(c. 93A violation where defendant corporation participated with its employee in violation of his duty of loyalty to former employer); *Lawton Kitchens, Inc. v. Hogan*, 18 Mass. App. Ct. 937, 939 (1984)(holding company liable under G.L. c. 93A for theft of trade secrets). Massachusetts law has long held it improper for a competing business to use misappropriated trade secrets of its competitor. *See e.g., Eastern Marble Prods. Corp. v. Roman Marble, Inc.*, 372 Mass. 835, 838-839 (1977) (holding defendant unlawfully obtained trade secret by hiring former employee of plaintiff). Guest-Tek has alleged that Lavigne and SolutionInc used and disclosed, without permission, Guest-Tek's confidential information. *See e.g.,* Am. Compl. ¶¶ 41-44, 67-79, 85, 86 and 88-107. In the Amended Complaint, Guest-Tek has alleged a valid claim against SolutionInc and Lavigne for violations of G.L. c 93, § 42 *et seq.*

Finally, Guest-Tek's complaint is not futile because Guest-Tek can assert a claim for violation of G.L. c. 93A. To plead a violation of G.L. c. 93A, Guest-Tek must allege the

interaction: (a) is "commercial" in nature; and (b) that both parties are engaged in "trade or commerce." *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 22-23 (1997). This Court has already held, in denying defendant PureHD's motion to dismiss the G.L. c. 93A claim, that the misappropriation and use of Guest-Tek's business record constitutes a violation of G.L. c. 93. Guest-Tek has alleged facts necessary to show that SolutionInc and Lavigne's conduct was "commercial" in nature in that it was designed to give PureHD a competitive advantage, *see e.g.* Am. Compl. ¶¶ 42-45, 67-81, 84-107, 112 and 119-123, and that SolutionInc., Lavigne and PureHD are all engaged in trade or commerce because they are direct competitors in the FTG, VOD, and HSIA markets. *See e.g.*, Am. Compl. ¶¶ 13-17 and 41-44.

Guest-Tek's claims are not futile because they assert, in painstaking detail, specific improper conduct and e-mails engaged in by Lavigne and SolutionInc which gives rise to their liability. For example, Guest-Tek has discovered and alleges:

- While Pullen was at Guest-Tek, Pullen was working with Shaw Cable on Guest-Tek projects. On March 24, 2009, long before he resigned, Pullen wrote to Lavigne that he "needs help from your buddy at Shaw . . . . need to transfer the GTK contracts working on now . . ." Pullen clearly relied upon Lavigne for the assistance that he provided in helping move business from Guest-Tek to PureHD. *See* Am. Compl. ¶ 122;

- Pullen described to Lavigne and SolutionInc that PureHD's most important business development activity was to gain an EchoStar license. To that end, on May 1, 2009, immediately before he resigned, Pullen sent to Lavigne and others at SolutionInc Guest-Tek's draft "Promotional Program Non-Binding Term Sheet with EchoStar Satellite L.L.C. from his personal email account. The Term Sheet contained proposed terms of the Guest-Tek's contract with EchoStar. It also contained internal Guest-Tek comments. Every page of the document is marked "Confidential and Proprietary." EchoStar is part of DISH Network. PureHD has partnered with DISH Network to provide television signal as part of its FTG package. The Term Sheet Pullen shared with Lavigne and SolutionInce would help Defendants' negotiations with DISH Network because it would give them a structure for the arrangement, give them knowledge of Guest-Tek's pricing and give them a "head start" in the market. Am. Compl. ¶¶ 85-86;

- Pullen with assistance from Lavigne and SolutionInc misappropriated Guest-Tek's FTG delivery methodology. In so doing, they deliberately targeted certain

Guest-Tek employees for hire and did hire at least one employee. More importantly, the offers of employment came from Lavigne and SolutionInc through Pullen while he was employed by Guest-Tek. Am. Compl. ¶¶ 41-44 and 68-74;

- Pullen misappropriated Guest-Tek's confidential information pertaining to the Archon RFP. Ultimately, PureHD, along with its "partner" SolutionInc bid on the Archon RFP. PureHD's proposal copied Guest-Tek's FTG delivery methodology, Bill of Materials and copied verbatim certain portions of Guest-Tek's Archon proposal. *See e.g.*, Am. Compl. ¶¶ 98-101;

- Over a course of many months, Pullen shared Guest-Tek's confidential and proprietary business information and trade secrets with Lavigne and SolutionInc. in furtherance of their conspiracy to set up PureHD. As a result, Pullen, PureHD, Lavigne and SolutionInc targeted Guest-Tek's clients, used Guest-Tek template documents and Pullen directed Guest-Tek corporate opportunities to Lavigne and SolutionInc. *See e.g.*, Am. Compl. ¶¶ 65-67, 73-80, 85-86, 98-101 and 119-123;

- Lavigne and Pullen agreed to use Chris Holman as PureHD's sales agent so Pullen could stay underground. In furtherance of that effort, while employed at Guest-Tek, Pullen sent Holman confidential Guest-Tek documents to assist him in his sales effort. *See e.g.*, Am. Compl. ¶¶ 77-78 and 87.

**B.    Defendants Are Not Unduly Prejudiced By The Addition Of Their Co-Conspirators To The Case.**

Defendants are not unduly prejudiced by the addition of Lavigne and SolutionInc because the case is still in its infancy. To date, the parties have exchanged documents but have not taken a single deposition. Defendants have only partly responded to Guest-Tek's "expedited discovery" served six months ago. Defendants have not responded in any manner to Guest-Tek's first request for documents served January 4, 2010. Guest-Tek has not yet answered Defendants' counterclaims because the counterclaims are subject to a pending motion to dismiss. The current discovery deadline is set for April 30, 2010, but Guest-Tek has already filed a motion to extend the Scheduling Order by six months. Based on the state of discovery in this matter, Defendants will not be prejudiced by the addition of new defendants.

Defendants also are not prejudiced by the addition of new defendants because the new claims do not drastically change the scope of discovery. SolutionInc and Lavigne's liability is

10

based on the same underlying conduct as Pullen and PureHD. Regardless of whether SolutionInc and Lavigne were joined in the current lawsuit, Pullen's communications with them would have been a focus of the litigation and they would have been deposed. Both parties listed Lavigne and SolutionInc in their Rule 26 disclosures. Defendants are not prejudiced by adding new defendants whose liability is based on the same set of facts and circumstances as Defendants' liability because Guest-Tek is not expanding the scope of discovery in the case.

Based on the fact that the parties have not conducted any depositions yet, have not completed written discovery, the new claims do not greatly expand the scope of discovery, and the fact that Defendants' only recently produced the discovery necessary to amend the Complaint, Defendants are not prejudiced by adding SolutionInc and Lavigne as defendants in this action.

Finally, SolutionInc and Lavigne will also not be prejudiced by their addition to this case. If the discovery deadline is extended, SolutionInc and Lavigne will have six months to obtain any discovery it seeks. Moreover, counsel for Defendants, Jackson Lewis, has indicated that it represents SolutionInc. While counsel has not indicated whether it represents Mr. Lavigne individually, it is likely that they will since he is the President of SolutionInc. Since all Defendants will most likely be represented by the same counsel, it will not require any learning curve for SolutionInc and Lavigne to get caught up to the little progress that has been made in this case.

### C. Guest-Tek Is Promptly Asserting The Claims Against SolutionInc And Lavigne

Guest-Tek first discovered Lavigne and SolutionInc's unlawful conduct in February 2010. While Guest-Tek certainly was aware of Lavigne and SolutionInc earlier, Defendants, by stonewalling during discovery, were able to prevent Guest-Tek from learning the true role played

by Lavigne and SolutionInc in directing Pullen's conduct. Once Guest-Tek discovered that SolutionInc and Lavigne were engaged in a conspiracy with Defendants and had aided and abetted their fiduciary duty by, *inter alia*, stealing Guest-Tek's delivery methodology, the scope of the conspiracy and Lavigne and SolutionInc's participation in it came into focus.

Guest-Tek spent years and millions of dollars in research and development to construct the proper circuitry, hardware, software and components that would deliver the quality of FTG services necessary for a hotel chain. Defendants, with Lavigne and SolutionInc's substantial assistance, misappropriated this technology and are offering it as their own. In fact, Lavigne and SolutionInc, made an offer of employment to a Guest-Tek employee who had knowledge of the FTG delivery method and transmitted that offer through Pullen. Am. Compl. ¶¶ 68-72.

Defendants' discovery tactics permitted them to hide their theft of Guest-Tek's delivery methodology. As part of the Stipulated Order entered at the beginning of the case, Defendants agreed to give Guest-Tek a copy of all the files on their computers. Defendants failed to disclose, however, that Guest-Tek files remained on their computers and that the copy was made months earlier on June 25, 2009. Since the injunction was not entered by the Court until October 14, 2009, Defendants were given almost three additional months to access Guest-Tek's confidential information. On November 4, 2009, Guest-Tek demanded that Defendants produce another copy of the files on their computer so that they could see what files Defendants accessed. After several meet and confers, Defendants finally agreed to produce a list of Guest-Tek files that Defendants accessed after the June 24, 2009 copy was made.

Despite repeated demands, Defendants did not provide Guest-Tek with the list of Guest-Tek files that Defendants accessed, after the June 24, 2009 copy was made until February 5, 2009. The list showed that Defendants accessed thirty-seven different Guest-Tek files after the

first copy was made. Some of the files were accessed as late as December 21, 2009. When Guest-Tek compared the files Pullen accessed to their copy of them, among other things, Guest-Tek's counsel realized that Pullen had downloaded and accessed a schematic drawing that showed the picture of the rack of equipment Guest-Tek used for FTG services. On February 8, 2009, Defendants finally agreed to remove the "Attorneys Eyes Only" designations from the boilerplate pages of their PureHD proposals, including the Bill of Materials. PureHD's Bill of Material was identical to Guest-Tek's Bill of Materials. With these two pieces of information, Guest-Tek's counsel could finally communicate with Guest-Tek and it learned that Defendants had misappropriated more than just names and addresses of customers, they had misappropriated Guest-Tek's FTG delivery methodology. Although it might seem like the delivery of FTG services is a simple process involving few components, in reality the correct combination of materials and equipment necessary to deliver it is very complicated. Guest-Tek spent years and millions of dollars in research and development bringing its product to the market with the necessary quality. SolutionInc would never have had access to the components or have been able to deconstruct the system.

Also in February, Defendants finally produced an attachment to an e-mail Pullen sent to several of the senior officers of SolutionInc. In an email, dated May 1, 2009, Pullen forwarded to SolutionInc and Guest-Tek's draft "Promotional Program Non-Binding Term Sheet with EchoStar Satellite L.L.C. The Term Sheet contained proposed terms of the Guest-Tek's contract with EchoStar. It also contained internal Guest-Tek comments. Every page of the document is marked "Confidential and Proprietary." EchoStar is part of DISH Network. PureHD has partnered with DISH Network to provide television signal as part of its FTG package. The Term Sheet Pullen shared with Lavigne and SolutionInce would help Defendants' negotiations

with DISH Network because it would give them a structure for the arrangement, give them knowledge of Guest-Tek's pricing and give them a "head start" in the market. Am. Compl. ¶¶ 85-86. Defendants identified getting an EchoStar license their number one business development priority. The DISH Network license was necessary because Guest-Tek's delivery system was designed to function with it.

Once Guest-Tek learned that Defendants and SolutionInc were using their delivery system, the other documents many of which had also been labeled AEO, confirmed that SolutionInc was deeply engrained in the theft of Guest-Tek's trade secrets. For example, the e-mails further demonstrate Pullen and Lavigne discussing how to get one of the major component suppliers for Guest-Tek's delivery methodology service to join with them at PureHD. Lavigne is orchestrating the coup of this component manufacturer, as well as being directly involved with the solicitation of one of Guest-Tek's principle engineers.

Through their improper designation of documents as AEO, their stonewalling during discovery, and their tardy production of the "certification" file, Defendants prevented Guest-Tek from learning the role that SolutionInc and Lavigne played in the theft of Guest-Tek's trade secrets and proprietary information until February 2010. Since Guest-Tek did not discover the role of SolutionInc and Lavigne until mid-February, it is promptly seeking leave to amend.

### D. Guest-Tek's Amended Complaint Is Asserted In Good Faith And Not To Delay The Proceedings.

Based on Defendants' failure to timely produce documents, Guest-Tek has previously filed a motion to amend the Scheduling Order. Such a request was made independent of the current motion. In the L.R. 7.1 conference, on the motion to extend discovery, Defendants seemed inclined to consider a short extension of the deadlines by 30 or 60 days, but would not consider an extension of six months. As explained previously, Guest-Tek is not seeking leave to

14

add SolutionInc and Lavigne merely to delay the proceedings, but rather the proceeding have already been inevitably delayed by Defendants' discovery tactics. Guest-Tek is the plaintiff in this action and is not interested in unnecessary delay. However, it is interested in vindicating its rights against all wrongdoers.

Guest-Tek is asserting its new claims in good faith. In the original Complaint, Guest-Tek could only allege that Pullen worked with SolutionInc to establish PureHD. *See* Compl. ¶¶ 75-77. When PureHD filed its corporate disclosure statement and listed SolutionInc as its parent company, Guest-Tek still did not file suit against SolutionInc because it could not demonstrate that SolutionInc had not done anything wrong. Guest-Tek has only sued SolutionInc and Lavigne now because when the discovery produced by Defendants during this litigation has demonstrated that Defendants and SolutionInc joined together to steal Guest-Tek's technology and the benefit of millions of dollars and years of research and development, Guest-Tek realized it needed to protect itself.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant Guest-Tek leave to amend to add defendants SolutionInc Ltd. and Glen Lavigne, by filing the Amended Complaint attached as Exhibit A.

                              GUEST-TEK INTERACTIVE ENTERTAINMENT LTD. and GUEST-TEK INTERACTIVE ENTERTAINMENT INC.,

                              By their attorneys,

                              /s/ David M. Cogliano
                              Gary M. Feldman, BBO #162070
                              David M. Cogliano, BBO #630185
                              Christopher J. Marino, BBO #655007
                              **DAVIS, MALM & D'AGOSTINE, P.C.**
                              One Boston Place
                              Boston, MA  02108
                              (617) 367-2500

Dated: March 19, 2010

## CERTIFICATE OF SERVICE

I hereby that certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 19, 2010 by first class mail.

/s/ David M. Cogliano
Christopher J. Marino, BBO No. 630185