UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-CV-11164-NMG

GUEST-TEK INTERACTIVE ENTERTAINMENT
INC. and GUEST-TEK INTERACTIVE
ENTERTAINMENT LTD.,

        Plaintiffs,

v.

THOMAS PULLEN and PUREHD LTD.,

        Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Plaintiffs, Guest-Tek Interactive Entertainment Inc. and Guest-Tek Interactive Entertainment Ltd. (collectively, "Guest-Tek") move this Court to compel defendants Thomas Pullen ("Pullen") and PureHD Ltd. ("PureHD") to produce *all* documents in their possession, custody or control which are responsive to Guest-Tek's requests for documents, not just those documents dated before October 14, 2009.

**SUMMARY OF ARGUMENT**

Guest-Tek alleges that Pullen, its former Vice-President of North American Sales, resigned from Guest-Tek after spending several months soaking up Guest-Tek's trade secrets and confidential and proprietary information. Pullen used Guest-Tek's trade secrets and confidential and proprietary information to form PureHD. Pullen not only took Guest-Tek's customer information and Guest-Tek's pricing bids and materials for specific customers, but he also took Guest-Tek's trade secret and confidential and proprietary methodology for delivering free-to-

guest services.  As a result of this conduct, Guest-Tek has brought claims against Defendants alleging, *inter alia*, breach of fiduciary duty and misappropriation of trade secrets.

Having been caught red-handed taking Guest-Tek's trade secrets and confidential and proprietary information, Pullen was compelled to enter into a stipulation in which he agreed, among other things, to return Guest-Tek's paper information and agreed that he would not use or disclose Guest-Tek's electronic information still stored on his and PureHD's computers.  On October 14, 2009, the Court entered the stipulation as an order (the "Stipulated Order").  Defendants contend that, because the Stipulated Order became effective on October 14, 2009, Guest-Tek is not entitled to any discovery after that date.  Defendants assert that before they will produce discovery after October 14, 2009, Guest-Tek must demonstrate that Defendants are violating the Stipulated Order.  To put Defendants' date limitation in perspective, PureHD was incorporated on May 22, 2009.  Consequently, Defendants are attempting to limit discovery into PureHD's activities into a less than five month window between May 22, 2009 and October 14, 2009.  Defendants' artificial discovery deadline completely ignores the nature of Guest-Tek's allegation in this case and what discovery has already revealed.

Not surprisingly, Defendants' position finds no support in the Federal Rules of Civil Procedure.  The Stipulated Order does not preclude discovery into legitimate areas of inquiry.  Legitimate, relevant discovery requests do not become objectionable just because a party promises to stop violating the law.  Even with the Stipulated Order, Guest-Tek is still entitled to the documents that contain discoverable information necessary for its claims.  In short, Pullen cannot use his act of contrition in entering into the Stipulated Order, as a way of preventing Guest-Tek from discovering the damage caused by Pullen's activities.

**ARGUMENT**

Unlike most discovery disputes in which the parties contest whether a particular request or set of requests is appropriate, Defendants do not dispute the legitimacy of the requests. In fact, Defendants agreed to produce, and in some cases have produced, responsive documents for the period before October 14, 2009. Defendants, however, refuse to produce any documents after October 14, 2009 asserting an across the board limitation on the scope of discovery based on the Stipulated Order. Fed. R. Civ. P. 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." *Id.* Relevant information need not be admissible, it need only be reasonably calculated to lead to the discovery of admissible evidence. *Id*. Defendants possess information after October 14, 2009, that is relevant and discoverable and that must be produced.

### I. DEFENDANTS' IMPROPER USE OF A SELF-IMPOSED DISCOVERY CUT-OFF IN RESPONSE TO GUEST-TEK'S EXPEDITED DISCOVERY.

Defendants' artificial deadline for discovery is unworkable because documents in Defendants' possession dated after October 14, 2009 are relevant to Guest-Tek's claims and defenses. Defendants' improper discovery deadline first arose in connection with Guest-Tek's expedited discovery. Expedited Request No. 1 seeks all documents concerning or identifying contact or communication between Defendants and any actual and prospective customer of Guest-Tek. Expedited Request No. 2 seeks, among other things, proposals, bids, requests for proposals, by Defendants to or from any actual or prospective Guest-Tek customers. While the parties were able to resolve a number of disputes through the meet and confer process, Defendants refuse to produce responsive documents after October 14, 2009.

Guest-Tek is entitled to Defendants' communications to actual and prospective Guest-Tek customers exchanged after October 14, 2009. Regardless of PureHD's compliance with the

Stipulated Order, Guest-Tek is entitled to such correspondence as the communication is likely to lead to the discovery of admissible information. For example, discovery confirms that PureHD submitted a proposal to the Archon Hospitality Group before October 14, 2009. PureHD produced its proposal during discovery. The Archon proposal impacted up to 290 hotels.[1] Guest-Tek can show that PureHD's proposal offered an exact replica of Guest-Tek's FTG delivery method. *See* Am. Compl. ¶ 44. PureHD's proposal not only copied Guest-Tek's technology, it even copied Guest-Tek's schematic of the front and back of the rack system developed by Guest-Tek to deliver its FTG solutions. *See* Am. Compl. ¶¶ 44, 99-100. PureHD's proposal demonstrates, *inter alia*: (a) the misappropriation of Guest-Tek's trade secrets and proprietary information, (b) Pullen's breach of his fiduciary duty; and (c) PureHD's violation of G.L. c. 93A.

With evidence that Defendants used Guest-Tek's trade secrets and confidential and proprietary information, Defendants are interested in discovering whether Defendants solicitation of Archon proved successful. Because Defendants refuse to produce discovery after October 14, 2009, Guest-Tek cannot tell if Defendants were successful in obtaining the Archon proposal. Defendants' artificial discovery limitation prevents Guest-Tek from understanding whether PureHD won the Archon bid. If PureHD won the Archon bid, or even a part of the bid, Guest-Tek is entitled to the contract; correspondence relating to the proposal, negotiations, and discussions between the parties; correspondence demonstrating PureHD's success; and evidence of how much money PureHD has made, or will make, from Archon. Guest-Tek is entitled to this information regardless of whether the contract, the correspondence, and the payment occurred before or after October 14, 2009. Notably, Defendants repeatedly claim that Guest-Tek has not

---

[1] While Archon selects a company that it approves to provide the free-to-guest ("FTG") services, each individual hotel could elect not to go with the selected contractor(s).

suffered any damages as a result of Defendants' conduct. Defendants' are incorrect as Guest-Tek already has evidence of some damages, but Defendants' refusal to produce any documents after October 14, 2009 certainly prevents Guest-Tek from obtaining additionally discovery demonstrating damages.

Guest-Tek is also entitled to information concerning proposals and bids that Defendants have submitted to Guest-Tek customers. Indeed, the withheld information goes to a crucial component of Guest-Tek's case. Guest-Tek has asserted, *inter alia,* claims for misappropriation of trade secrets, breach of fiduciary duty, and violations of G.L. c. 93A, based on Pullen's theft of Guest-Tek's technology. One of Guest-Tek's contentions is that Defendants are submitting proposals using Guest-Tek's trade secrets, proprietary and confidential information. As previously described, at least one of PureHD's proposals contains Guest-Tek's confidential and proprietary information. Guest-Tek is entitled to see the full extent to which Defendants' are misappropriating their technology, which it can do from the proposals. PureHD's proposals each contain a bill of materials which list the equipment that PureHD will use. The bill of materials, along with other information in the proposals, will allow Guest-Tek to determine whether PureHD's proposal involves the use of Guest-Tek's stolen technology. Guest-Tek is entitled to discovery on whether Defendants are using Guest-Tek's trade secrets, proprietary and confidential information and discovery after October 14, 2009 is essential to this inquiry.

By limiting discovery to October 14, 2009, Defendants are unilaterally limiting: (a) the number of clients about whom they need to provide discovery; and (b) the amount of damages for which Defendants will be responsible. Defendants are improperly preventing Guest-Tek from identifying customers for which, after October 14, 2009, Defendants: (1) submitted a proposal using Guest-Tek's stolen technology, (2) received a response to a previously submitted

proposal using Guest-Tek's stolen technology, or (3) received compensation for a contract that used Guest-Tek's stolen technology. Guest-Tek is entitled to know and show that PureHD submitted a proposal using Guest-Tek's technology even if the proposal was submitted after October 14, 2009. Similarly, because Defendants will not produce any documents after October 14, 2009, Defendants are hiding any damages after that date because, without discovery, Guest-Tek cannot prove that Defendants' submitted a proposal using Guest-Tek's stolen technology.

Defendants' decision to limit discovery to October 14, 2009, is a tactical decision designed to limit their damages. Defendants know that, through October 14, 2009, they were able to divert to PureHD only one Guest-Tek customer, the Snowmass Viceroy hotel managed by the KOR Group. Of course, Defendants also know that generating business is like growing plants: the seed is planted long before the flower blooms. Consequently, Defendants are attempting to limit discovery to the area in which they were planting seeds, but then deprive Guest-Tek of the ability to see if a seed ever grew. The Snowmass Viceroy hotel exemplifies why Defendants' efforts must be rejected. While employed at Guest-Tek, Pullen was intimately involved in preparing a proposal for the KOR Group for Viceroy Snowmass. Upon leaving Guest-Tek and with knowledge of the details of Guest-Tek's KOR proposal, Pullen caused PureHD to submit a proposal to Viceroy Snowmass. PureHD was awarded the Viceroy Snowmass contract.

PureHD refuses to produce correspondence with KOR after October 14, 2009. While at Guest-Tek, Pullen was involved with other KOR Group hotels, such as Viceroy Santa Monica and Avalon Beverly Hills. Both of these hotels were customers of Guest-Tek. Guest-Tek recently received notices of cancellation from Viceroy Santa Monica and Avalon Beverly Hills as well as two other KOR resorts. Guest-Tek is entitled to PureHD's communications and

proposals to the KOR Group even after October 14, 2009, because they will demonstrate PureHD's role in the KOR Group's decision to terminate Guest-Tek. Guest-Tek has evidence that Pullen was disparaging Guest-Tek's products to customers. *See* Am. Compl. ¶ 121. Guest-Tek knows that PureHD was soliciting the KOR Group and that it secured the Viceroy Snowmass hotel. Guest-Tek is entitled to know whether any of the seeds PureHD planted between May 22, 2009 and October 14, 2009, grew into a plant after October 14, 2009.

## II. DEFENDANTS IMPOSE THE SAME IMPROPER TIME LIMITATION IN RESPONSE TO GUEST-TEK'S RULE 34 REQUESTS.

On January 4, 2010, Guest-Tek served its first request for documents pursuant to Fed. R. Civ. P. 34. As they did in response to the Expedited Discovery, for a number of requests, Defendants improperly refuse to produce documents after October 14, 2009. Three examples of Defendants improper use of a discovery cut-off are:

Request No. 2

In request No. 2, Guest-Tek seeks:

> documents, including correspondence and e-mails, concerning potential business opportunities, business leads, or other potential customers for any business in which Guest-Tek is involved, about which Pullen learned before May 4, 2009, including but not limited to documents relating to [specific, identified customers]:
>
> * * * *
>
> This request includes documents after May 4, 2009, to the extent they relate to a business opportunity or lead discovered before that date.

Defendants' response, while deficient for several reasons outside the scope of this motion because they are currently the subject of a Rule 7.1 conference, provides that Defendants will produce documents "for the time period between August 1, 2008 and October 14, 2009."

Again, Defendants' attempt to limit the responsive documents through October 14, 2009 must be rejected. The request seeks information about business opportunities that Pullen learned about before he resigned from Guest-Tek on May 3, 2009. Through the date of his resignation, Pullen had an obligation to bring to Guest-Tek's attention all potential business opportunities. Discovery confirms that Pullen failed to do so and was in fact diverting potential opportunities to SolutionInc. and/or PureHD. *See* Am. Compl. ¶¶ 119-123. The request addressed Pullen's failure to disclose to Guest-Tek potential business opportunities is not related in any way to the protections afforded by the Stipulated Order, which are designed to prevent any further erosion of Guest-Tek's trade secrets and confidential and proprietary information. Defendants can offer no justification for limiting Guest-Tek to October 14, 2009 for information relating to the potential business opportunities that Pullen failed to disclose.

Knowing that Pullen diverted at least some corporate opportunities, Guest-Tek is entitled to additional discovery to determine whether: (a) Pullen failed to bring to Guest-Tek's attention any other business opportunities that he learned about; and (b) whether Pullen made a pitch for the business opportunities that he learned about while employed at Guest-Tek. Guest-Tek is entitled to discovery about business opportunities that Pullen learned about during his employment at Guest-Tek, even if Pullen did not cause PureHD to submit a proposal for this business after October 14, 2009. As alleged in the Amended Complaint, Pullen wrote to SolutionInc. about installing HDTV at a large number of hotels in time for the Vancouver Olympics. Even if Defendants did not act on the lead until October 14, 2009, Guest-Tek is still entitled to discovery into whether Defendants submitted a bid for this project.

Request No. 5

In Request No. 5, Guest-Tek seeks "[a]ll documents, including correspondence and e-mails, between Pullen and any person concerning any purported technical problems experienced by Guest-Tek, including but not limited to, issues concerning the integration or set-up of Enseo set top boxes." Defendants responded that they would produce responsive documents "for the time period August 1, 2008 and October 14, 2009."

In discovery, Pullen produced an e-mail in which he tells a prospective Guest-Tek customer that Guest-Tek is having a technical issue with its delivery system. *See* Am. Compl. ¶ 121. Again, this request is completely unrelated to anything addressed by the Stipulated Order. Defendants could be in complete and full compliance with the Stipulated Order (which prevents Defendants from using Guest-Tek's confidential information) and still be disparaging Guest-Tek's product to potential customers in the marketplace and interfering with its prospective relations. Guest-Tek is entitled to know whether Pullen is making false statements of fact about Guest-Tek's services, technology and product to generate business for PureHD regardless of whether these statements were made before or after October 14, 2009. Guest-Tek has asserted claims against Defendants for violations of G.L. c. 93A and the Lanham Act. Since Defendants' comments would violate these statutes, it is discoverable.

Request No. 12

In Request No. 12, Guest-Tek seeks "[a]ll documents concerning money received by Defendants from SolutionInc., including commission, referral fees, distributions, or other payments, and including the timing of such payments." Defendants responded that they would produce responsive documents "for the time period August 1, 2008 and October 14, 2009." Again, there is simply no plausible justification for a limitation of October 14, 2009.

Guest-Tek offers free-to-guest ("FTG"), video-on-demand ("VOD"), high-speed internet access ("HSIA"), and voice-over-internet protocol ("VoIP") services to its customers. While at Guest-Tek, Pullen developed proposals to Guest-Tek clients that included FTG, VOD, HSIA and VoIP components. Towards the end of his employment, Pullen sent e-mails about potential business opportunities to SolutionInc. *See* Am. Compl. ¶¶ 119-123. To the extent Pullen is being compensated for these leads, Guest-Tek is entitled to know about these payments, regardless of when they occur. Even if the referral payment does not become due and payable until after the installation is complete and the installation does not occur until after October 14, 2009, Guest-Tek is still entitled to payment information.

Guest-Tek is also entitled to know about the payment of referrals or commissions, regardless of timing, because PureHD competes only in the FTG market. Guest-Tek has evidence that Pullen used Guest-Tek's technology and information to undercut Guest-Tek's bid on particular customers. Guest-Tek is entitled to know whether Pullen diverted the VoIP/VOD/HSIA portion of these proposals to SolutionInc and, if so, was Pullen compensated for doing so (either before or immediately after, he resigned from Guest-Tek). Again, the results of this conduct may have surfaced only after October 14, 2009.

### III.  DEFENDANTS SHOULD BE DENIED FROM ASSERTING THE SAME ARGUMENT GOING FORWARD.

Finally, Guest-Tek served its second request for the production of documents on March 31, 2010. By agreement, Defendants have not yet responded to this set of requests. Guest-Tek requests that Defendants be precluded from proffering the same October 14, 2009 limitation. Guest-Tek does not suggest that Defendants cannot argue for an appropriate limitation to a particular request based on the nature of the request or the type of information requested. Rather,

Guest-Tek merely seeks to prevent Defendants from continuing to refuse to produce documents after October 14, 2009, based on the Stipulated Order, when such a limitation is not justified.

## CONCLUSION

Because there is no just reason for limiting discovery to October 14, 2009, Guest-Tek respectfully requests that the Court grant its motion to compel and compel Defendants to produce all responsive documents in their possession, custody or control, regardless of the date of the document.

                        GUEST-TEK INTERACTIVE ENTERTAINMENT INC. and GUEST-TEK INTERACTIVE ENTERTAINMENT, LTD.

By its attorneys,

/s/ Christopher J. Marino
Gary M. Feldman, BBO #162070
David M. Cogliano, BBO #630185
Christopher J. Marino, BBO #655007
**DAVIS, MALM & D'AGOSTINE, P.C.**
One Boston Place
Boston, MA  02108
(617) 367-2500

Dated: May 3, 2010

## CERTIFICATE OF SERVICE

I hereby that certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 3, 2010 by first class mail.

/s/ Christopher J. Marino

542922v.2