UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GUEST-TEK INTERACTIVE ENTERTAINMENT INC. and GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS PULLEN and PUREHD LTD., <br><br> Defendants. | CIVIL ACTION NO. 09-CV-11164-NMG |

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendants Thomas Pullen and PureHD file this brief in opposition to the motion to compel discovery filed by Plaintiffs Guest-Tek Interactive Entertainment, Inc. and Guest-Tek Interactive Entertainment Ltd. (collectively "Guest-Tek").  Guest-Tek seeks ongoing production up to the present of all communications with any customer or potential customer of Guest-Tek in spite of the fact that there is no restriction on Defendants' ability to solicit Guest-Tek's customers.  Guest-Tek alleges that it is entitled to such production of documents up to the present based on speculation that the documents might contain evidence that Defendants misappropriated Guest-Tek's alleged confidential and proprietary information.  However, Guest-Tek has presented absolutely no evidence that Defendants have violated the Stipulated Order entered by the Court on October 14, 2009 prohibiting Defendants from using or disclosing Guest-Tek's confidential and proprietary information or that Guest-Tek has lost any customers or revenue to Defendants as a result of any such alleged use or disclosure.

Defendants' position that they will produce responsive documents prior to but not after the entry of the Court Order strikes the appropriate balance between permitting Plaintiffs to

conduct reasonable discovery and protecting Defendants' ability to conduct ongoing business without providing Guest-Tek unnecessary access to Defendants' ongoing business communications and opportunities. Defendants also object to production of post-October 2009 documents on the grounds that it is overbroad and unduly burdensome.

## FACTUAL BACKGOUND

This case primarily involves allegations that Defendant Thomas Pullen possessed and used Guest-Tek's confidential and proprietary information, as it is undisputed that Pullen is not bound by any restrictive covenants with Guest-Tek that bars him from soliciting Guest-Tek's customers. Unfortunately, primarily through Mr. Pullen's routine practice of backing up computer files, he was in possession of documents he created and/or received while a Guest-Tek employee. Based on this fact alone, Guest-Tek has inaccurately cast this case as an egregious example of corporate theft and has mischaracterized Mr. Pullen as a bad actor who "soaked up" Guest-Tek's confidential and proprietary information for his own nefarious means. However, the reality is that there has been no misappropriation of Guest-Tek's confidential and proprietary information, and Guest-Tek has not identified any lost business whatsoever that can be attributed to any alleged misappropriation or use of its allegedly confidential and proprietary information by Mr. Pullen.

Shortly after the commencement of this litigation by Guest-Tek, the parties began negotiations to satisfy Guest-Tek's concern about Defendants' possession of alleged Guest-Tek confidential and proprietary information. Ultimately, the parties agreed to a complete purging of all alleged Guest-Tek information from Defendants' computers, and the presentation to the Court of a Stipulated Order prohibiting Defendants from any use of the information in question.[1] That

---

[1] Contrary to Guest-Tek's hyperbolic statements that Pullen was "compelled" to enter into the order as an "act of contrition" after being caught "red-handed," the order and purging were good faith attempts by Defendants to

Order was filed by the parties on or about August 7, 2009, which was less than three months after Mr. Pullen had left Guest-Tek's employ.  The Court entered the Order on October 14, 2009. (See, Order attached as <u>Exhibit A</u> hereto)

Nevertheless, Guest-Tek seeks production of documents created after the entry of the Order relating to communications, proposals and bids with Guest-Tek's customers or potential customers, as well as similar documents relating to certain business opportunities and leads, and has now filed a motion to compel such production.  Defendants have repeatedly made clear to Guest-Tek their significant concern that this litigation not be used as (1) an improper means for Guest-Tek to learn what ongoing legitimate business opportunities Defendants may have and (2) an oppressive financial drain on a small start-up company and its founder.  Guest-Tek's motion is an illustrative example of Defendants' concerns.  Therefore, Defendants oppose Guest-Tek's motion to compel.

## ARGUMENT

### I.     Guest-Tek is Not Entitled to Production of Documents After October 14, 2009

As stated above, the October 14, 2009 Court order prohibits Defendants from using Guest-Tek's confidential and proprietary information.  Further, all alleged Guest-Tek proprietary and confidential information has been deleted from Defendants' computers and there is no evidence of any improper access or use of alleged Guest-Tek computer files that were in Defendants' possession through March 2010, the date that the files were purged.

Guest-Tek claims it is entitled to determine if communications, proposals and related documents created after October 14, 2009 up to the present and on an ongoing basis contain allegedly confidential and proprietary Guest-Tek information regarding Guest-Tek's technology

---

demonstrate to Guest-Tek that Defendants had no intention of using any alleged Guest-Tek confidential or proprietary information.

and delivery method. Guest-Tek puts the cart before the horse on this issue. Guest-Tek has not produced sufficient information or evidence regarding its technology or delivery method that might create a dispute of fact as to whether either is confidential and proprietary, nor has it produced information indicating that its technology or delivery method was misappropriated by Defendants. Instead, Guest-Tek simply argues in a conclusory fashion that since alleged Guest-Tek information appeared in a PureHD proposal prior to October 14, 2009, Guest-Tek should be entitled to any and all communications, proposals, requests for proposals, and other related documents after October 14, 2009.

At a minimum, Guest-Tek should be required to produce evidence establishing its assertion that its technology and delivery method is confidential and proprietary to Guest-Tek, and that Defendants misappropriated that same technology and delivery method, prior to Defendants being required to conduct a search and produce potentially voluminous documents relating to all of its communications with any Guest-Tek customer or potential customer. See e.g. L-3 Communs. Corp. v. Reveal Imaging Techs., 2004 Mass. Super. LEXIS 519 at *34-35 (Van Gestel, J.) (December 2, 2004) (allowing motion by defendant for plaintiff to "specifically identify those trade secrets that form the basis of their trade secret misappropriations claims before any discovery may be had on those claims."); Staffbridge Inc. v. Gary D. Nelson, Associates, Inc., 2004 Mass. Super. LEXIS 215 at *10-11 (Van Gestel, J.) (June 11, 2004) (ordering plaintiff to identify under oath "with rigorous and focused particularity what, and only what, the plaintiffs claim to constitute the trade secrets allegedly misappropriated by either of the defendants that form the basis for this law suit" before discovery on the allegedly infringing materials will be allowed)  This is especially the case in a situation where, as here, the Court Order has entered prohibiting use of any alleged confidential and proprietary information, Guest-

Tek has not identified any evidence that the Order has been violated, and Defendants have not even accessed or been in possession of Guest-Tek files for several months.

**A. October 14, 2009 is an Appropriate Cut-Off Date for Document Production**

This case involves an ongoing tension between two interests: one one hand, Guest-Tek's desires to discover every detail of every communication Defendants have had with Guest-Tek's customers and potential customers even though Defendants have no prohibitions on communicating with Guest-Tek's customers and potential customers; and on the other hand, Defendants' legitimate interests in protecting against having to reveal its ongoing communications with potential customers to a hostile adversary and not having to expend its limited resources on unnecessary discovery. In an effort to strike a balance between these tensions, Defendants have offered a reasonable solution – production of voluminous documents up to the October 14 Court order, but not thereafter. Indeed, Defendants have incurred significant expense in discovery to date conducting searches for documents, and have already produced over 2,600 documents, including many communications and proposals up to October 14, 2009.[2] Guest-Tek can hardly argue that it has been stonewalled or not had access to voluminous documents which allow Guest-Tek to determine in detail the business activities of Defendants through October 14. Guest-Tek also cannot point to any lost customers or revenue caused by any alleged use of its allegedly confidential and proprietary information by Defendants.

Defendants respectfully submit that a line must be drawn at some point to avoid a costly fishing expedition, and that October 14, 2009 is the most logical and fair cut-off date. Again, the Court order governing Defendants' activities provides sufficient protection that Defendants have

---

[2] The proposals produced by Defendants reveal that they are largely boilerplate documents with little differentiation between them. As such, Guest-Tek is already in possession of the typical PureHD proposal.

5

not used Guest-Tek's confidential and proprietary information, and Guest-Tek offers no evidence that that the order has been violated or that it has lost any customers or revenues to Defendants. The production of documents as demanded by Guest-Tek would in essence amount to Defendants having to copy Guest-Tek on each and every e-mail to or from customers or potential customers.  This is an absurd notion and demonstrates the concerns Defendants have in this case regarding the use of discovery by Guest-Tek to educate itself as to Defendants legitimate business activities to which Guest-Tek has no right.

**B.  Guest-Tek's Document Production Requests are Overbroad and Unduly Burdensome**

Guest-Tek's requests for any and all documents relating to all communications, proposals, requests for proposals, bids, business opportunities and leads, and related documents to or from any Guest-Tek customer or potential customer up to the present are also vastly overbroad and unduly burdensome.  As stated above, there is no evidence that Defendants have used any allegedly confidential and proprietary Guest-Tek information.  Production of responsive documents would involve the review of literally thousands of e-mails, as well as numerous proposals or draft proposals.  Defendants have already expended significant financial resources responding to document production requests and should not be forced to incur more significant expense in this regard without at least Guest-Tek producing information to support its theory that its technology and delivery method is confidential and proprietary and was misappropriated by Defendants.

Moreover, if Guest-Tek's reason for this discovery is as it states – to determine whether Defendants have utilized allegedly confidential and proprietary Guest-Tek information in its business – that determination can be made through a review of Defendants' proposals.  It is entirely unnecessary, overbroad and unduly burdensome for Defendants to have to produce every single communication between them and any Guest-Tek customer or potential customer.  Guest-

Tek's overbroad requests for every communication of this nature reveals its true desire – to gain insights into the confidential business activities and opportunities Defendants are pursuing on an ongoing basis.  Quite simply, as long as Defendants are not using Guest-Tek confidential and proprietary information, Guest-Tek has absolutely no right to this discovery.

### C. Less Intrusive Means of Discovery Could Be Imposed By the Court

As an alternative to a blanket order requiring Defendants to produce all documents related to all communications, proposals, requests for proposals, business opportunities and leads and related documents, Defendants respectfully submit that discovery could be conducted in a far more reasonable and less onerous fashion.  Specifically, Guest-Tek has nominally identified its alleged confidential and proprietary information at issue and has named a number of alleged customers and potential customers to which Defendants submitted proposals.  Guest-Tek has argued that it is entitled to discovery of the requested documents in order to determine whether Defendants obtained any business from these entities.

As stated above, Guest-Tek should be required to produce documents and information relating to its theory that its technology and delivery method have been misappropriated.  This includes, but is not limited to, evidence of the actual technology and delivery method to which Guest-Tek refers, proof that this information is confidential and proprietary to Guest-Tek, and proof that it is not stale.  Indeed, production of this information should have been made long before now, as it is responsive to a number of discovery requests by Defendants.  (See February 9, 2010 correspondence to Gary Feldman, attached hereto as Exhibit B)[3]

Further, the question of whether Defendants have obtained any business from Guest-Tek customers or potential customers, and related questions regarding any potentially ongoing

---

[3] Defendants attach this correspondence as evidence that Defendants have sought discovery from Guest-Tek of the alleged confidential and proprietary information in this case.  Guest-Tek did produce supplemental documents subsequent to this correspondence that it may contend are responsive to these requests.

relationships with these entities, can be answered in response to more narrowly tailored document requests that require production of any proposals and related communications relating to any Guest-Tek customers or potential customers from whom PureHD has done business. To the extent that no business has been obtained by Defendants from these entities, Guest-Tek would have no legitimate basis for pursuing production of documents relating to these entities any further. This measure alone would significantly decrease the burden on Defendants to search for and produce responsive documents relating to all communications by narrowing down the group of Guest-Tek customers or potential customers that may actually be at issue in the case.

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court deny Guest-Tek's motion to compel documents.

Defendants request oral argument on this issue.

        Respectfully submitted,

        THOMAS PULLEN AND PUREHD INC.
        By their attorneys,


        /s/ Stephen T. Paterniti
        Stephen T. Paterniti, BBO#564860
        Erik J. Winton, BBO #600743
        JACKSON LEWIS LLP
        75 Park Plaza
        Boston, MA  02116
        (617) 367-0025

Dated:  July 16, 2010

**CERTIFICATE OF SERVICE**

    This hereby certifies that on this 16th day of July, 2010, a copy of the foregoing document was served upon Plaintiff's counsel, Gary M. Feldman, Esq., Davis, Malm & D'Agostine, P.C., One Boston Place, Boston, MA 02108, via e-mail and hand delivery.

    /s/ Stephen T. Paterniti
    Jackson Lewis LLP