UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-CV-11164-NMG

| | |
|---|---|
| GUEST-TEK INTERACTIVE ENTERTAINMENT INC. and GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., <br><br>       Plaintiffs/Counterclaim-Defendants <br><br> v. <br><br> THOMAS PULLEN and PUREHD LTD., <br><br>       Defendants/Counterclaim-Plaintiffs | Leave to File Granted on November 29, 2010 |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Plaintiffs/Counterclaim-Defendants Guest-Tek Interactive Entertainment Inc. and Guest-Tek Interactive Entertainment Ltd. (collectively, "Guest-Tek" or "Plaintiffs") submit this Reply Memorandum in support of their Motion to Compel Discovery ("Motion to Compel").

**I. DEFENDANTS' NEVER CHALLENGE THE RELEVANCE OF THE REQUESTED DOCUMENTS OR PLAINTIFFS' ARGUMENTS IN SUPPORT OF THEIR MOTION TO COMPEL**

What is most notable about Defendants' Opposition to Plaintiffs' Motion to Compel ("Def. Opp.") is what it lacks. Defendants never challenge or oppose Guest-Tek's arguments in support of its Motion to Compel. Because there is no basis for challenging the relevance of the sought after documents, Defendants simply ignore Plaintiffs' arguments for which they have no response and spend eight pages trying to justify why October 14, 2009 is a "logical and fair cut-off date." The undisputed facts show however that October 14, 2009 is neither logical nor fair

because it prohibits Guest-Tek from obtaining information that not only is relevant, but essential to its case.

### A. Defendants Seek to Prohibit Guest-Tek from Obtaining Information Regarding Defendants' Communications With Plaintiffs' Customers and Prospective Customers

This is a case about Defendants' disloyalty, misappropriation of Guest-Tek's information and their unlawful establishment of an entity for the purpose of unlawfully competing with Guest-Tek. Guest-Tek has alleged, *inter alia*, Defendants are liable for misappropriation of trade secrets, breach of the duty of loyalty, misrepresentation, breach of the implied covenant of good faith and fair dealing, conversion, and violation of M.G.L. 93A. Expedited Requests Nos. 1 and 2[1] seek documents concerning communications and proposals to Guest-Tek's actual or prospective customers. Discovery, thus far, has revealed that when Defendants were forming their business, they intended on focusing on Guest-Tek's customers and prospective customers as a means of jump-starting their business. *See e.g.*, Proposed Amended Complaint ("Am. Compl.")(Docket No. 42-1) ¶¶ 73, 75 and 80.[2] Consistent with that stated intention, Defendants have produced communications and proposals (created prior to October 14, 2009) from Defendants to Guest-Tek customers as part of its stated plan to go after Guest-Tek's customers. Specifically, discovery has shown Defendants have had ongoing communications with a variety of Guest-Tek's customers and potential customers about business opportunities - some of which

---

[1] Exhibit A attached herein contains a copy of Guest-Tek's Expedited Discovery Requests and select document requests from its First Request for Production of Documents that was served on January 4, 2009. Plaintiffs have only included the specific requests from its January 4, 2009 Request for Production that Defendants have explicitly refused to produce responsive documents after October 14, 2009. By its Motion, Plaintiffs seek an order that Defendants' be ordered to produce all relevant and responsive documents created after October 14, 2009 regardless of whether Defendants have explicitly raised that objection.

[2] Guest-Tek moved to amend its complaint to add Glen Lavigne and SolutionInc as defendants. The additional allegations were the result of information Plaintiffs learned from Defendants' initial document productions. The proposed Amended Complaint adds claims against Lavigne and SolutionInc but it asserts the same causes of action (with some additional factual predicate) against Pullen and PureHD. Guest-Tek's Motion to Amend is pending before the Court. Because the proposed Amended Complaint does not allege new causes of action against Pullen and PureHD, the subjects of the pending Motion to Compel, and relies on information that was produced by Defendants, Guest-Tek will refer to the proposed Amended Complaint rather than the initial complaint.

revolve around proposals Pullen began working on on behalf of Guest-Tek. Discovery has also shown draft proposals and email communications about potential projects or pending projects. Now, without any legitimate justification, Defendants are trying to prohibit discovery of the end result of these negotiations, communications and proposals. There is no lawful justification for cutting off Guest-Tek's access to relevant information regarding these proposals, negotiations and communications midstream, particularly when the documents are directly relevant to liability and damages. *United States v. Mass. Industrial Finance Agency*, 162 F.R.D. 410, 414 (D. Mass. 1995)("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the litigation.")

Additionally, Defendants have already produced at least one proposal which shows that Defendants have incorporated Guest-Tek's technology, including a copy of Guest-Tek's schematic of the front and back of the rack system developed by Guest-Tek to deliver FTG solutions. The same proposal uses Guest-Tek's Bill of Materials, which Pullen admits is confidential and proprietary. *See* Am. Compl. ¶¶ 97-101. Moreover, Defendants' Opposition admits that its proposals "are largely boilerplate documents with little differentiation between them. As such, Guest-Tek is already in possession of the typical PureHD proposal." Def. Opp. at 5 n.2. Given this admission and given that Guest-Tek knows that "the typical PureHD proposal" incorporates its confidential and proprietary information, there can be no basis for not producing the proposals and all of the communications surrounding such proposals. Guest-Tek is entitled to know the current status of those communications, opportunities and proposals particularly where Defendants admit they incorporate Guest-Tek's confidential information. Certainly such information meets the standard of relevance under Fed. R. Civ. P. 26(b)(1) and is

3

a standard discovery request in this type of case.[3] It is absolutely unfair to preclude Guest-Tek from discovery that is so obviously germane to its claims.

Finally, Guest-Tek is also entitled to know about communications with its customers and prospective customers that commenced *after* October 14, 2009. Defendant claims that there is no restriction on their communications with Guest-Tek's customers and prospective customers. Def. Opp. at 1. That simply is not true. Defendants cannot use and/or disclose Guest-Tek's confidential information in communicating with Guest-Tek's customers. The fact that Defendants believe they should be unfettered in their communications with Guest-Tek's customers and prospective customers is at the very heart of this case.[4] Defendants' brazen attitude that they should not be restricted in any way highlights precisely why discovery as to Defendants' conduct after October 14, 2009 is relevant. *See* Fed. R. Civ. P. 26(b)(1)( "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.")

### B.   Any Revenue Generated From Guest-Tek's Purloined Proposals is Relevant to Guest-Tek's Damages

The absurdity of Defendants' proposed cut-off date is revealed when they falsely claim that Guest-Tek "has not identified any lost business whatsoever that can be attributed to any alleged misappropriation or use of its allegedly confidential and proprietary information by Mr. Pullen." Def. Opp. at 2. Putting aside the fact that this is not true,[5] this argument is precisely the

---

[3] Defendants' claim that any of the requests is overly broad or unduly burdensome is similarly misplaced. According to Defendants, PureHD came into existence on May 3, 2009. Thus, the universe of documents is very limited. Indeed, at this point, it would cover little more than a year. This fact highlights how narrow Defendants proposed cut-off date actually is. Defendants are asking the Court to rule that anything after October 14, 2009, a mere five months after Defendants' claim PureHD commenced business is overly broad. That argument defies common sense.

[4] Defendants' claim that there is no evidence they used or accessed Guest-Tek's misappropriated information after October 14, 2009 is not accurate and cannot be used to limit information after October 14, 2009. *See* Section III(B).

[5] Defendants were awarded the contract on the Viceroy Snowmass hotel after Defendant Pullen worked on the proposal for that hotel at Guest-Tek. Am. Compl. ¶¶ 10-106; *see also* Plaintiffs' Memorandum of Law in Support of

4

problem with the October 14, 2009 cut-off date. How is Guest-Tek supposed to show lost revenue when Defendants refuse to produce any documents after October 14, 2009? Discovery has shown that negotiations about terms and conditions of proposals were ongoing with many of Guest-Tek's customers. Because of Defendants' unilateral decision to not produce anything after October 14, 2009, Guest-Tek has no way of knowing the end result of those negotiations. Guest-Tek certainly is entitled to know what revenue Defendants have generated by their wrongful conduct including using Guest-Tek's confidential customer information and the confidential and proprietary information they admit they incorporated into all their proposals. According to Defendants, PureHD only came into existence in May 2009, revenue generated from the misappropriated information would likely be after October 14, 2009. *See* Pl. Mem. at 6 (Docket No. 54). This revenue related information is wholly unrelated to the terms of the Stipulated Order and there is no basis for Defendants to claim it is not relevant since it was generated after October 14, 2009. *See* Expedited Request No. 3.

## II. THE STIPULATED ORDER DOES NOT COVER MANY OF GUEST-TEK'S REQUESTS

The purported reason Defendants' claim for the October 14, 2009 is a "logical and fair" cut-off date is that is when the Court entered the Stipulated Order and therefore Guest-Tek is sufficiently protected from a misappropriation of its confidential information. Def. Opp. at 5-6. Defendants' argument ignores the simple fact that some of Guest-Tek's requests do not even fall within the purview of the Stipulated Order.

---

Motion to Compel at 6. Guest-Tek also received notices of cancellation from Viceroy Santa Monica, Avalon Beverly Hills as well as two other KOR resorts. *Id.*

### A. Diversion of Corporate Opportunities Are Not Covered by the Stipulated Order

Initial discovery has revealed that Defendant Pullen diverted corporate opportunities to Lavigne and SolutionInc. *See* Am. Compl. ¶¶ 119-123. Guest-Tek is entitled to learn the extent of that breach of the duty of loyalty. Moreover, Guest-Tek is entitled to discovery about business opportunities that Pullen learned about during his employment at Guest-Tek, even if Pullen did not cause PureHD to submit a proposal after October 14, 2009. *See* First Request for Production No. 2. Additionally, Guest-Tek is entitled to know whether and to what extent, SolutionInc is compensating Defendants for referrals made by Defendants to SolutionInc. These fees likely may have surfaced after October 14, 2009 and there is no basis for limiting discovery to that date. The responsive documents are wholly independent of the protections purportedly put in place by the Stipulated Order. *See* First Request for Production Nos. 2 and 15.

### B. Defendants' Disparaging Comments Are Not Covered by the Stipulated Order

Pullen has already produced an e-mail in which he tells a prospective Guest-Tek customer that Guest-Tek is having a technical issue with its delivery system. *See* Am. Compl. ¶ 121. Defendants could be in complete and full compliance with the Stipulated Order (which prevents Defendants from accessing or using Guest-Tek's confidential information) and still be disparaging Guest-Tek's product to customers and prospective customers and engaging in unlawful business practices pursuant to M.G.L. c. 93A. Again there is no basis for limiting Defendants' responsive requests to documents generated before October 14, 2009 in this regard. Such an order would allow Defendants to say whatever disparaging and untrue things they wish about Guest-Tek and its products and services after October 14, 2009 with impunity. *See* First Request for Production of Documents No. 5.

6

## III. DEFENDANTS' UNRESPONSIVE ARGUMENTS ARE NOT SUPPORTED BY THE FACTS

Because Defendants ignore Guest-Tek's arguments in support of its Motion to Compel, they make a series of unsubstantiated and nonresponsive assertions in support of their argument. None of Defendants' arguments justify an October 14, 2009 cut-off date.

### A.  This Entire Case Arises Out of Defendants' Repeated Lies and Deceit

Defendants' Opposition once again uses their oft employed tactic of trying to blame Plaintiffs for this litigation and, in turn, for pursuing discovery in support of their claims. In their latest pleading, Defendants' claim that this case arises "[u]nfortunately, primarily through Mr. Pullen's routine practice of backing up computer files, he was in possession of documents he created and/or received while a Guest-Tek employee" Def. Opp. at 2. As has been documented in many pleadings before the Court, Defendants' conduct was not innocent and this is simply another example of Defendants trying to shift the focus away from their devious conduct and place the burden on Plaintiff.

The undisputed facts at this point show that while employed as Vice President of North American Sales, Defendant Thomas Pullen spent months misappropriating Guest-Tek's confidential and proprietary information in order to set up and use the information at a competing entity, PureHD. Am. Compl. at ¶¶ 45-64, 84-107. Pullen lied about his intentions and actively deceived Guest-Tek for at least eight (8) months. *Id.* at ¶¶ 108-118. During Pullen's employment, he lied about his whereabouts and instead of working on behalf of Guest-Tek, he worked on behalf of PureHD. *Id.* at ¶ 112. After Pullen's sudden resignation on May 3, 2009, Guest-Tek learned that he stole their confidential and proprietary information. Pullen then lied to Guest-Tek about what information he possessed and refused to return it. *Id.* at ¶¶ 124-131. Only after Guest-Tek was prepared to move for a preliminary injunction and conducted a

Local Rule 7.1 Conference with Defendants did Pullen agree to return the misappropriated information. In fact, the Stipulated Order, which is at the heart of Defendants' Opposition, was only entered after Defendants were informed that Guest-Tek was moving for preliminary injunction.

Defendants' limited document productions have revealed that Defendants' deception was greater than originally realized. Guest-Tek learned that Pullen diverted corporate opportunities to Glen Lavigne and SolutionInc (*Id.* at ¶¶ 119-123); worked in concert and provided assistance to Lavigne and SolutionInc while still employed at Guest-Tek to hire Guest-Tek employees, (*Id.* at ¶¶ 68-74); identified for Lavigne and SolutionInc, Guest-Tek's customers and potential customers (*Id.* at ¶¶ 67, 73, 75 and 78); transmitted Guest-Tek documents marked as confidential to Pullen and Lavigne (*Id.* at ¶¶ 84-88); misappropriated Guest-Tek's FTG delivery technology (*Id.* at ¶¶ 42-44, 69-72 and 98); misappropriated and incorporated into a PureHD proposal Guest-Tek's Bill of Materials (*Id.* at ¶ 101); and, copied verbatim portions of Guest-Tek's proposals into PureHD's proposals (*Id.* at ¶ 100).

Despite this conduct, Defendants continue to accuse Guest-Tek of pursuing this litigation including discovery as an improper means for Guest-Tek to learn what business opportunities Defendants have and to place a financial burden on a small start-up company. Def. Opp. at 3. Defendants' insistence on an artificial cut-off date is just the latest example of trying to avoid responsibility for their deceptive conduct. Defendants' repeated efforts to "blame" this litigation on Guest-Tek should not be condoned and should not be the basis for restricting discovery to a five month window between May 3, 2009 and October 14, 2009.

### B. Defendants Have Accessed Guest-Tek's Files After October 14, 2009 and Admit to Incorporating Misappropriated Information Into Its Proposals

Defendants repeatedly claim that the date the Court order was entered, October 14, 2009 is a "logical and fair cut-off date" because Guest-Tek offers no evidence that the order has been violated. Def. Opp. at 5-6. That simply is not a true statement. The Affidavit of Christopher J. Marino, Esq. (Docket Number 40-1), which was filed in support of Plaintiffs' pending Motion to Extend the Scheduling Order, explicitly states that Defendants' expert certification

> shows a number of Guest-Tek files were access on Defendants' computer after the first image, and as late as December 21, 2009. Specifically, the list showed that Defendants accessed thirty-seven different Guest-Tek files after the first copy was made. Some of the files were accesses [sic] as late as December 21, 2009.

Marino Affidavit ¶ 58. Defendants' assertions that they have not accessed files Pullen misappropriated from Guest-Tek after the Stipulated Order entered are just not true and undercut any claim that October 14, 2009 is a balanced cut-off date for discovery. Defendants' own expert has shown that they have accessed the files after October 14, 2009. For this reason alone Defendants' artificial cut-off date of October 14, 2009 fails.

### C. Guest-Tek Has Identified the Confidential Information At Issue and Pullen Admits It Is Confidential and Proprietary Information

Defendants repeatedly claim in their Opposition that the only confidential information at issue is Guest-Tek's technology and delivery method and that Guest-Tek has not presented sufficient evidence as to "create a dispute of fact as to whether either is confidential and proprietary, nor has it produced information indicating that its technology or delivery method was misappropriated by Defendants. Def. Mem. at 4. Pullen's own admissions directly contradict this argument. Pullen has already testified that technological services (such as delivery methodology) are confidential and proprietary information. On July 16, 2010, Defendants' filed a Motion for Protective Order regarding Guest-Tek's proposed Amended

9

Complaint. In support of its Motion for Protective Order, Defendants submitted an affidavit from Pullen. Pullen stated under oath that:

> Even a small amount of knowledge regarding a competitor's marketing strategies, financial planning, technological services, pricing information or potential customers could provide a significant competitive advantage to a company in this area. Accordingly, any information is considered highly confidential.

Affidavit of Thomas Pullen in Support of Defendants' Motion for a Protective Order Prohibiting Plaintiffs From Disclosing Defendants' Confidential Information ("Pullen Aff.") ¶ 4 (attached hereto as Exhibit B.) More specifically, Pullen testified:

> The documents . . . consist of Bill of Materials that PureHD offers to deliver to potential customers. The specific materials used by PureHD in order to provide its services to customers are the core of its business. The disclosure of those materials would significantly undermine its competitiveness in the marketplace, by allowing competitors to examine its materials and copy their usage. Indeed, one of these documents includes the pricing PureHD offered to a particular customer for its services. Notably, when PureHD sent these bills of materials to prospective customers the prospective customers were instructed to maintain the bill of materials confidential.

*Id.* at ¶ 6(C). Defendants have already provided at least one proposal in which they used Guest-Tek's Bill of Materials. Am. Compl. ¶ 101. Pullen admits that a Bill of Materials "are the core of its business." Pullen Aff. ¶ 6(C). It is disingenuous for Defendants to claim that Guest-Tek's delivery methodology and technology is not confidential and proprietary. Defendants never deny – nor could they – that they incorporated this information into their proposals. Moreover, they never deny that they are continuing to do so. *Id.* at ¶¶ 97-101; *see* Dep. Opp. at 5 n.2. In fact, Defendants marked every page of the proposal in which they used the misappropriated information as "confidential and proprietary," consistent with Pullen's testimony that such information is confidential. Am. Compl. ¶ 99. These admissions are sufficient to rebut Defendants' Opposition.

10

Defendants also ignore all the other confidential and proprietary information that they misappropriated beyond the delivery methodology and Bill of Materials and which are implicated by the challenged document requests. Such information includes, but is not limited to:

- Customer lists, customer contact information, financial information of customers and specific customer needs (Am. Compl. ¶¶ 21, 49-52, 62, 66 and 67);

- Guest-Tek's pricing information and responses to requests for proposals (Am. Compl. ¶¶ 59, 88-101);

- Guest-Teks's cost and bidding structures, vendor relationships and details on future business opportunities for Guest-Tek (Am. Compl. ¶¶ 63, 66 and 80);

- Business Guest-Tek was targeting (Am. Comp. ¶¶ 73 and 75);

- Guest-Tek's FTG Solutions for United States Hotels, which was a document created by Pullen and is used by Guest-Tek's sales force to market and sell Guest-Tek's FTG solutions to customers and contains pricing information. (Am. Compl. ¶ 77);

- Guest-Tek's FTG Solution with Shaw Cablesystems GP Solution, which was used to market to hotels in western Canada. (Am. Compl. ¶ 78);

- Guest-Tek's contracts with vendors such as EchoStar Satellite L.L.C., which is part of DISH Network. (Am. Compl. ¶ 85)

- A form Guest-Tek reseller agreement (Am. Compl. ¶ 87)

Pullen has admitted that all this type of information is confidential and proprietary. *See* Pullen Aff. ¶¶ 4, 6(A), (B) and (E). Specifically, with regard to PureHD's financial information and those strategies it employed to meet its financial goals, Pullen testified

> If these documents are disclosed to the public, then any competitor of PureHD would be able to utilize the now-confidential marketing strategies of PureHD in the marketplace to the detriment of PureHD, thereby limiting PureHD's ability to be competitive.

*Id.* at ¶ 6(A). Moreover, with regard to PureHD's customer related information, Pullen stated under oath that

11

>These documents include extensive references to prospective customers of PureHD, which if identified by competitors would significantly harm PureHD. For instance, if PureHD competitors were aware of PureHD's targeting of and potentially ongoing discussions with identified prospective customers, then those competitors would similarly target those prospective customers and impede PureHD's ability to make a favorable business agreement with those entities. Moreover, those competitors would be able to co-opt PureHD's confidential strategies and business ideas in order to further diminish PureHD's competitive standing in the marketplace. Accordingly, the information in these documents should be protected from disclosure.

*Id.* at ¶ 6(B). With these admissions, Defendants cannot conceivably argue with any legitimacy that the information they misappropriated and is at issue in the document requests is not confidential or that Guest-Tek has not shown it is confidential. Defendants admit it is confidential and proprietary.

### D.   Defendants Seek a Protective Order Without a Showing of Good Cause

Notwithstanding Defendants' admissions, and the fact that Defendants have accessed the information after October 14, 2009 Defendants' argument erroneously tries to shift the burden on Guest-Tek at this early stage. Defendants are essentially arguing that Guest-Tek must prove one of the ultimate issues in the case – that Defendants misappropriated Guest-Tek's confidential and proprietary information – in order to obtain discovery. In other words, Guest-Tek must prove its case without discovery in order to obtain discovery. To quote Defendants, this "puts the cart before the horse."

Specifically, Defendants claim that before they are required to incur the expense of responding to the document requests, Guest-Tek should be required to show that its technology and delivery method is confidential information and was misappropriated by Defendants. Def. Mem. at 6 -7. Defendants admit the information is confidential. The issue presented by Guest-Tek's Motion to Compel is whether the responsive documents are relevant pursuant to Fed. R.

12

Civ. P. 26(b)(1). However, by its refusal to produce any responsive documents generated after October 14, 2009, Defendants essentially seek a protective order. Defendants have not made such a showing and have not made the necessary showing of good cause for such an order. *See Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 263-264 (D. Mass. 1991)(recognizing that a party seeking a protective order must show a factual basis of potential harm). In light of their admissions, Defendants could never make such a showing. The Court should not countenance Defendants' inappropriate burden shift.

### IV. MEASURES CAN BE IMPLEMENTED TO ENSURE DEFENDANTS' BUSINESS RELATED INFORMATION IS PROTECTED

Defendants also claim that Guest-Tek is using discovery to educate itself as to Defendants' legitimate business activities. Def. Mem. at 6. The parties have repeatedly used an "attorneys' eyes only" designation for much of the discovery produced thus far in this case. Thus, any fears of Defendants are seeking information for purposes beyond this litigation are easily addressed. *Multi-Core, Inc.*, 139 F.R.D. at 264 (weighing competing interests, court ordered documents produced only to counsel of record and experts and/or consultants). Documents can be appropriately designated as they have in the past in this case and will be treated accordingly. Defendants' fears are unfounded.

Finally, Defendants claim that Guest-Tek "can hardly argue that it has been stonewalled" in its efforts to discover Defendants business activities through October 14, 2009. Def. Mem. at 5. First, the point of Guest-Tek's Motion to Compel is to discover Defendants' business activities <u>after</u> October 14, 2009 not just "through" October 14, 2009. Second, Defendants have stonewalled discovery at every turn. Indeed, Defendants' refusal to produce any information after October 14, 2009, is just the latest example of Defendants' stonewalling. The fact that Defendants are using the Stipulated Order as the basis not to produce information after October

14, 2009 when many of the document requests do not even implicate the Stipulated Order is just the latest example of Defendants' obfuscation. Similarly, Defendants' claim that Guest-Tek has not produced any damage related information while at the same time Defendants refuse to produce any damage related documents borders on the surreal. *See* Expedited Request Nos. 2 and 3 and First Request Nos. 2, 4 and 12. The affidavit of Christopher J. Marino, Esq. (Docket No. 40-1) documents in detail Defendants' continuous efforts to stonewall Guest-Tek from pursuing legitimate areas of discovery. To the extent discovery has been costly, Defendants should look to their own conduct and utter unwillingness to produce obviously discoverable material. Defendants' "stonewalling" is the very reason Guest-Tek was forced to file this Motion to Compel.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Plaintiffs' Memorandum in Support of Motion to Compel, Guest-Tek respectfully requests that its Motion to Compel be granted.

>                                 GUEST-TEK INTERACTIVE ENTERTAINMENT INC.
>                                 and GUEST-TEK INTERACTIVE ENTERTAINMENT,
>                                 LTD.
>
>                                 By its attorneys,
>
>                                 /s/ David M. Cogliano
>                                 Gary M. Feldman, BBO #162070
>                                 David M. Cogliano, BBO #630185
>                                 Christopher J. Marino, BBO #655007
>                                 **DAVIS, MALM & D'AGOSTINE, P.C.**
>                                 One Boston Place
>                                 Boston, MA 02108
>                                 (617) 367-2500

Dated: November 30, 2010

## CERTIFICATE OF SERVICE

I hereby that certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on November 30, 2010 by first class mail.

/s/ David M. Cogliano
David M. Cogliano, BBO No. 630185

550787v.3