```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

****************************
GUEST-TEK INTERACTIVE
ENTERTAINMENT, INC. et al,
        Plaintiffs

vs.                                  Case No. 09-cv-11164-MBB

PureHD LIMITED et al,
        Defendants
****************************


              TRANSCRIPT OF MOTION HEARING
         BEFORE THE HONORABLE MARIANNE B. BOWLER
                AT BOSTON, MASSACHUSETTS
                  ON NOVEMBER 29, 2010
```

APPEARANCES:

For Plaintiffs:
Davis, Malm & D'Agostine, PC
One Boston Place
Boston, Massachusetts 02108
617-589-3812
By David M. Cogliano, Esquire

For the Defendants:
Jackson Lewis, LLP
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
617-367-0025
By Stephen T. Paterniti, Esquire and Erik J. Winton, Esquire


Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

              --------------------------------------------------

**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | P R O C E E D I N G S                                                |
| 2  |                                                                      |
| 3  | THE CLERK:  Civil Action 09-11164, Guest-Tek versus                  |
| 4  | PureHD.                                                              |
| 5  | (Pause.)                                                             |
| 6  | THE CLERK:  Would counsel please state your name for                 |
| 7  | the record.                                                          |
| 8  | MR. COGLIANO:  Thank you.  David Cogliano on behalf of               |
| 9  | the plaintiff, Guest-Tek.                                            |
| 10 | THE COURT:  Thank you.                                               |
| 11 | MS. PATERNITI:  Steve Paterniti and Eric Winton on                   |
| 12 | behalf of all defendants.                                            |
| 13 | THE COURT:  Thank you very much.                                     |
| 14 | Well, counsel, I have your joint motion to convert the               |
| 15 | pretrial conference to a scheduling conference and that is           |
| 16 | allowed.  Let's talk about what has to be done here.                 |
| 17 | I do have some housekeeping motions, looking at the                  |
| 18 | docket.  Docket Entry No. 39, which was the first motion to          |
| 19 | modify the scheduling order, which I would say at this time is       |
| 20 | moot.                                                                |
| 21 | MR. COGLIANO:  Yes, your Honor.                                      |
| 22 | THE COURT:  There is a motion to compel, 53.                         |
| 23 | Is that still outstanding?                                           |
| 24 | MR. COGLIANO:  Yes, your Honor.                                      |
| 25 | THE COURT:  All right.  No. 61, first motion for leave               |

```
 1   to file a reply was unopposed.
 2            MR. COGLIANO:  The reply in support of the motion to
 3   compel?
 4            THE COURT:  Right.  Right.
 5            MR. COGLIANO:  Yes, your Honor.
 6            THE COURT:  So it can be allowed.
 7            And 67 was an assented-to motion for extension of time
 8   in September to file an answer to the amended complaint.
 9            MR. COGLIANO:  Yes, your Honor.
10            THE COURT:  All right.  So that is also -- can be
11   allowed nunc pro tunc.  So that leaves us just with 53, which
12   we'll get to.
13            But let's talk a little bit about the proposal as it
14   is in Docket Entry No. 75.
15            MR. COGLIANO:  Yes, your Honor.  It actually mirrors
16   the original schedule --
17            THE COURT:  Right.
18            MR. COGLIANO:  -- that we had entered into, and the
19   case sort of has a long procedural history.  There was motions
20   to dismiss --
21            THE COURT:  Right.
22            MR. COGLIANO:  -- on both sides, motions to dismiss
23   claims and then counterclaims; and then we did some expedited
24   discovery, which is the source of the motion to compel.  So
25   that discovery is not even complete.  But during the course of
```

1  that discovery, plaintiffs were able to uncover some additional
2  information, which then allowed us to add --
3            (There was a break in the audio.)
4            MR. COGLIANO:  -- SolutionInc and Glen Lavigne.  They
5  were joined -- I believe they answered the complaint on
6  September 30th or September 3rd -- I'm not sure -- of 2010.  So
7  now we want to sort of -- once we clarify -- get a ruling on
8  the motion to compel, go forward with six months of fact
9  discovery, 30 days after that, expert discovery, and then 45
10 days after that, dispositive motions, if either side wishes to
11 file a dispositive motion.
12           So that's the schedule --
13           THE COURT:  So fact discovery to close -- I don't
14 know.  I have to move over here to the next year's calendar.
15 June 30th.
16           MR. COGLIANO:  Yes, your Honor.
17           THE COURT:  How does that sound?
18           Do you expect to use experts in this case?
19           MR. COGLIANO:  Well, at this stage, both parties, or
20 all the parties, I should say, have at least engaged computer
21 forensic experts.  I'm not sure if we'll need them to testify,
22 but I would anticipate we may.
23           THE COURT:  Okay.  So plaintiff to ID experts by June
24 17th.
25           MR. COGLIANO:  Okay.

1    THE COURT:  Defendants by July 15th, and expert
2    discovery to be completed by August 31st.
3        Now, there's a suggestion maybe further dispositive
4    motions?
5        MR. COGLIANO:  Well, I'm not sure.  If we decide we
6    want to move for summary judgement at the close of discovery,
7    that's always a possibility.
8        THE COURT:  Okay.  So dispositive motions to be filed
9    by September 30th.
10       MR. COGLIANO:  We had requested, I think, the parties,
11   45 days after the close of the expert discovery.
12       THE COURT:  So October --
13       MR. COGLIANO:  Fifteenth.
14       THE COURT:  -- 14th is a Friday.
15       MR. COGLIANO:  Okay.
16       THE COURT:  All right.  But now tell me, from
17   plaintiff's point of view, what you plan to do for discovery.
18       MR. COGLIANO:  Well, in the first issue, we'd like to
19   get resolved some of the issues that were initiated in the
20   expedite discovery, which is related to finding out --
21       THE COURT:  Well, I mean, obviously your documents.
22       MR. COGLIANO:  Right.  Documents and depositions.
23       THE COURT:  But what about depositions?
24       MR. COGLIANO:  Depositions --
25       THE COURT:  How many depositions do you plan to take?

1         MR. COGLIANO:  I would anticipate between --
2    approximately 10.
3         THE COURT:  What about defendants?
4         MS. PATERNITI:  I would anticipate at least -- well, I
5    would say approximately 10.
6         THE COURT:  Okay.
7         MS. PATERNITI:  Maybe more, your Honor.
8         THE COURT:  Okay.
9         MR. COGLIANO:  I was going to say 10 to 15.
10        THE COURT:  You get 10 to start with.  Leave of Court
11   for more than 10.  And get your written discovery out.
12        Defendants want to be heard on any discovery issues?
13        MS. PATERNITI:  Well, obviously we have the motion to
14   compel --
15        THE COURT:  That's coming next.
16        MS. PATERNITI:  Yeah.  I heard you earlier on that.
17        You know, counsel and I had talked and had not
18   finalized our discussions, or we were not able to follow up on
19   it, but there was a suggestion that perhaps if we identify some
20   of the critical issues in the case, that we might be able to
21   set a mediation somewhere in the middle of discovery.
22        This is a case that's gone on for a long time.
23        THE COURT:  Yeah.
24        MS. PATERNITI:  And from my clients' perspective, they
25   really would like it resolved.  It's impeding their ability to

1   actually do business.  One of the individual plaintiffs had to
2   declare personal bankruptcy largely because of this.
3           So we would very much want to look at the possibility
4   of trying to do quick, you know, limited discovery on some
5   critical issues, and again, with plaintiffs' consent obviously,
6   see if we could get it into a mediation.
7           THE COURT:  Well, you can have the mediation here for
8   free.  The only thing is everybody has to be onboard.  You have
9   to think that it's going to work.
10          Even if you're far apart, that doesn't necessarily
11  mean it won't work.  But all you have to do is file a joint
12  motion to refer it to mediation at a point when both sides
13  think it's time.
14          And then I will warn you that it takes four to six
15  weeks to get a date --
16          (There was a break in the audio.)
17          THE COURT:  -- depending upon how busy the other
18  judges are.  But before you get into experts and dispositive
19  motions, I would think about it as a cost-saving mechanism.
20          It's always a possibility too for a business solution
21  to be reached at mediation, which once you frame it for a jury,
22  it's a different story.
23          So all we need is that joint motion and we'll send it
24  right out, okay.
25          MS. PATERNITI:  Appreciate it.

```
 1          THE COURT:  All right.  So that leaves us with Docket
 2   Entry No. 53, and I'll hear you.
 3          MR. COGLIANO:  Well, Attorney Paterniti and I
 4   discussed this in advance.  We weren't prepared to argue the
 5   motion.
 6          THE COURT:  You should always be prepared when you
 7   come to court.
 8          (Laughter.)
 9          MR. COGLIANO:  Well, we're prepared.  We thought it
10   was a scheduling conference.  We were happy to come in at any
11   other time this week or --
12          THE COURT:  Oh, come on.  Let's do it.  You're here.
13   This was filed back in April.  Don't tell me you forgot what it
14   is you wanted.  It can't be that important if you've forgotten.
15          MR. COGLIANO:  No, your Honor, I did not forget.
16          Essentially --
17          THE COURT:  Well, here's the way I do this.
18          MR. COGLIANO:  Okay.
19          THE COURT:  I listen to the moving party.  We go down
20   the list one by one.  You tell me what you want and then the
21   other side tells me why they don't want to produce it.  I make
22   the ruling from the bench.  That way when you leave here, you
23   know exactly what you have to produce and when you have to
24   produce it, rather than take it under advisement, put it in the
25   queue, and, you know, the clock stops while that's going on.
```

1           So tell me, you know, let's go through them.

2           MR. COGLIANO:  Well, we want documents after October

3    14th, 2009, your Honor.

4           THE COURT:  Okay.  Well, let's -- what request are we

5    talking about?

6           MR. COGLIANO:  Well, that's why it's -- what

7    defendants have done have basically put a blanket prohibition

8    on any documents for all the requests after October 14th, 2009;

9    and just by way of background, when this case started, this

10   case is about Tom Pullen, one of the defendants,

11   misappropriating confidential information, and the plaintiffs,

12   we were moving for a preliminary injunction.  We had done a

13   forensic review of his computer, had seen that he had

14   misappropriated confidential information.  He had started a

15   competing entity.

16          THE COURT:  No, I remember the facts.

17          MR. COGLIANO:  And before we filed our motion for

18   preliminary injunction as part of the Rule (inaudible) process,

19   we agreed to a stipulated order that the Court entered on

20   October 14th, 2009.  Defendants have taken the position that

21   then there should be no discovery after the date of the entry

22   of the stipulated order.  The stipulated order prohibits

23   Mr. Pullen and his company, PureHD, from disclosing or using

24   Guest-Tek's confidential information.  But they've taken the

25   position that that's also a discovery order, a discovery

1   limitation, and it doesn't really -- in plaintiffs' view, it
2   doesn't work that way.
3          For example -- I'll give you an example.  We found in
4   the initial discovery that defendants made a proposal to one of
5   plaintiffs' customers.
6          THE COURT:  When?
7          MR. COGLIANO:  Before October 14th, 2009.  They
8   refused to produce any information telling us what happened
9   after, or what happened to that proposal.  Was he granted that
10  proposal?  What follow-up communications were there with that
11  proposal?  Because their view is, no, the stipulated order says
12  we don't have to do that.
13         So in our view, that's an example.  The stipulated
14  order has no bearing on that.
15         In another example --
16         THE COURT:  Okay.  Let me hear from your brother.
17         Why won't you produce something that was initiated
18  prior to October 14th?
19         MS. PATERNITI:  Well, our main concern, your Honor, in
20  opposing the motion and drawing a line in the sand at
21  October 14th was at the time, and this, of course, goes back
22  several months now, but at the time, plaintiffs were pressing
23  us to produce every document, basically, and every
24  communication with every potential customer and every bid to
25  date.

1        So essentially, and I had this conversation with
2   Mr. Cogliano's colleague, is essentially what you're asking us
3   to copy you on every communication we're having and we're
4   trying to do business.  They're competing ventures, and there's
5   been significant concern from the outset of this litigation
6   that plaintiffs are attempting to stop us -- stop our clients
7   in court from conducting business on a legitimate basis.  We
8   dispute the facts about the misappropriation, et cetera.
9        So the position we tried to -- we tried to figure out
10  a compromise position where we would produce documents showing
11  them what Mr. Pullen had done and what PureHD (inaudible) --
12       (There was a break in the audio.)
13       MS. PATERNITI:  -- company had done in the early days
14  of its inception, and the bids and the proposals that went
15  out -- by the way, almost none of which were successful -- and
16  we had a court order as of October 14th beyond which we took
17  the position that there's a court order in place.  There's no
18  evidence that it was violated.  There's no evidence that
19  confidential proprietary information was used in any way,
20  shape, or form since then, and so that is the reason that we
21  drew the line in the sand, as it were, at October 14th.
22       If there are specific proposals that predate
23  October 14th that the plaintiff believes would establish their
24  case, we certainly would consider, with a narrowed request,
25  answering that, and that's part of our opposition.

1           THE COURT:  Well, then it's allowed to the extent of
2    any proposal or any business that was commenced, or any
3    invitation for business that was commenced prior to
4    October 14th.
5           MS. PATERNITI:  That's a very difficult thing to
6    define sometimes, because in this business, there are
7    relationships with, for instance, Hyatt the brand, and then
8    hotel owners who run Hyatt hotels, they might own a group of
9    Hyatt hotels, and then a third group that you might do business
10   with.  So a conversation that might have started in August of
11   2009 about some business generally or generically, or hey, can
12   I come in and meet you, some of it is very much of a continuum.
13          So a conversation that might have started then might
14   still be going on.  There may not be any business opportunities
15   or any exchange of confidential information, and we get into is
16   that the exception that swallows the ruling.  We're back to
17   producing everything and every communication that this guy has
18   had to have.
19          THE COURT:  No.  I stand by the ruling.
20          MR. COGLIANO:  And, your Honor, if I could just --
21   there are other requests that aren't even related to the
22   stipulated order.  For example, in our amended complaint, there
23   are --
24          THE COURT:  We're going through these -- are you
25   telling me what you're seeking number by number?

1     MR. COGLIANO: No, your Honor. See, the way our
2  motion was crafted was that we were seeking an order that this
3  October 14th deadline, because they --
4     THE COURT: Okay. I've made a ruling then as to that
5  date.
6     Now, that being said, I want to see you in -- well,
7  how about early March, to see how the discovery is going. Now,
8  if by that point you have filed your motion for ADR and it's
9  sent out to ADR, I won't probably have you in. But unless it's
10 cancelled by the clerk, it stands.
11    So can we have a date for a further conference.
12    THE CLERK: Wednesday, March 2nd.
13    THE COURT: All right, at 2:30. If that becomes a
14 difficult date vacation wise or anything for anyone, just call
15 the clerk and let us know, all right.
16    So you have your schedule in-hand. Fact discovery
17 closing by June 30th. Plaintiff's to ID experts by June 17th,
18 defendants by July 15th. Expert discovery over by August 31st.
19 Dispositive motions by October 14th. Further conference
20 March 2nd at 2:30.
21    MR. COGLIANO: Your Honor, could I ask for one
22 clarification on the motion to compel ruling?
23    Part of the motion -- there are proposals that were
24 made after October 14th.
25    Do those fall within the scope of your order?

1     THE COURT:  No.  I said everything before October
2  14th.
3     MR. COGLIANO:  Then if I could just address one other
4  point, your Honor.
5     Mr. Pullen admits in an affidavit -- and this is all
6  contained in our reply memorandum -- in their opposition, they
7  state that their proposals are boilerplate.  We've alleged that
8  their proposals incorporated our confidential information.
9  They dispute that it's confidential.  In our reply memorandum,
10 we pointed out admissions from a previously-filed affidavit by
11 Mr. Pullen where he admits the information is confidential
12 information.
13    Therefore, it's our contention, and I would ask the
14 Court that proposals, given that he's admitted they contain
15 confidential information, and that they're all boilerplate,
16 proposals that he made post-October 14th contain Guest-Tek's
17 confidential information.
18    THE COURT:  No.  Denied at this time as to that.
19    All right.  I wish you a nice holiday season.
20    MR. COGLIANO:  Thank you, your Honor.
21    MR. WINTON:  Thank you, your Honor.
22    THE COURT:  You're welcome.
23    MS. PATERNITI:  Thank you, your Honor.
24
25    (The hearing was concluded.)

C E R T I F I C A T I O N

     I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 14 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.


/s/ Karen M. Aveyard

Karen M. Aveyard


December 6, 2010

Date